UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JASON RONALD REINHART,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A BERRYHILL, Deputy Commissioner of Social Security for Operations,<br><br>Defendant. | CASE NO. 3:17-CV-05831-DWC<br><br>ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS |

Plaintiff Jason Ronald Reinhart filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of Defendant's denial of Plaintiff's applications for supplemental security income ("SSI") and disability insurance benefits ("DIB"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 2.

After considering the record, the Court concludes the Administrative Law Judge ("ALJ") erred in his consideration of medical opinion evidence from Dr. J. Alex Crampton, Psy.D. Had the ALJ properly considered Dr. Crampton's opinion, the residual functional capacity ("RFC")

may have included additional limitations. The ALJ's error is therefore not harmless, and this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner of Social Security ("Commissioner") for further proceedings consistent with this Order.

## FACTUAL AND PROCEDURAL HISTORY

On February 12, 2014, Plaintiff filed applications for SSI and DIB, alleging disability as of December 31, 2010. *See* Dkt. 7, Administrative Record ("AR") 16. The applications were denied upon initial administrative review and on reconsideration. *See* AR 16. ALJ James Sherry held a hearing on April 26, 2016. AR 39-71. In a decision dated May 20, 2016, the ALJ determined Plaintiff to be not disabled. AR 13-38. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council, making the ALJ's decision the final decision of the Commissioner. *See* AR 1-7; 20 C.F.R. § 404.981, § 416.1481.

In Plaintiff's Opening Brief, Plaintiff maintains the ALJ erred by: (1) failing to provide legally sufficient reasons to discount medical opinion evidence; (2) finding Plaintiff did not meet Listing 12.04, 12.06, or 12.09; (3) improperly discounting Plaintiff's subjective symptom testimony; and (4) not allowing a lay witness to testify at the hearing. Dkt. 11, pp. 6-12. Plaintiff argues that due to these errors, an award of benefits is appropriate. *Id.* at 13.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## DISCUSSION

**I. Whether the ALJ properly considered the medical opinion evidence.**

Plaintiff argues the ALJ erred in his consideration of the medical opinion evidence. Dkt. 11, pp. 10-12. In particular, Plaintiff asserts the ALJ erred in his consideration of opinion evidence from Dr. J. Alex Crampton, Dr. Nitin Karnik, Mr. Marshall Johnson, and by giving greater weight to non-examining sources over examining and treating physicians. *Id.*

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)); *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). When a treating or examining physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

A. Dr. Crampton

Dr. Crampton performed a psychological/psychiatric evaluation of Plaintiff on July 13, 2013. AR 433-46. Dr. Crampton provided his evaluation on a Washington State Department of Social & Health Services ("DSHS") form. *See* AR 433. As part of his evaluation, Dr. Crampton performed a clinical interview, a mental status examination, and other psychological tests. *See* AR 433-46. Dr. Crampton opined Plaintiff was limited in his ability to conduct several work activities. For instance, Dr. Crampton opined Plaintiff was moderately limited in his ability to

learn new tasks, perform routine tasks without special supervision, make simple work-related decisions, and understand, remember, and persist in tasks by following very short and simple instructions. AR 435. Dr. Crampton also found Plaintiff moderately limited in his ability to be aware of normal hazards and take appropriate precautions, and ask simple questions or request assistance. AR 435.

In addition, Dr. Crampton determined Plaintiff was markedly limited in two areas: his ability to understand, remember, and persist in tasks by following detailed instructions, and his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision. AR 435. Finally, Dr. Crampton opined Plaintiff had severe limitations in his ability to adapt to changes in a routine work setting, communicate and perform effectively in a work setting, maintain appropriate behavior in a work setting, and complete a normal work day and work week without interruptions from psychologically-based symptoms. AR 435.

The ALJ summarized parts of Dr. Crampton's examination and then gave Dr. Crampton's opinion "little weight" for several reasons:

> (1) The doctor did not have any records to review, so it was largely based on the claimant's self-report. (2) The claimant did not disclose he continued to use marijuana regularly, so the doctor was unable to make an accurate diagnosis/assessment of functioning. (3) Further, while it is agreed the claimant has some limitations due to his mental health, the severity found by Dr. Crampton was inconsistent with his reported activities to the doctor. For instance, the doctor reported the claimant had a severe limitation in his ability to adapt to changes at work, and was unable to complete a normal workday or workweek, yet the claimant was the single stay-at-home parent of three young children at the time. The severity is inconsistent with the claimant's treatment records that showed he was engaging in a wide range of activities. (4) It is further noted that Dr. Crampton is not a treating provider, and his opinion was based on a one-time exam. (5) The doctor did not think the claimant would be limited for more than six months, or permanently disabled by his condition, which is further inconsistent with his severe findings. (6) Although the claimant reported he

struggled with this for years, this is belied by the lack of any evidence showing a history of treatment.

(7) The DSHS report is given limited weight for additional reasons. DSHS uses different rules and regulations to establish disability, so the same conclusions may not have been reached if applying only our regulations. Evaluations conducted for DSHS are largely based on the claimant's self-reported symptoms and complaints, and (8) in this case, the severity of the report is not consistent with the objective findings upon exam. He had some deficits, but they were not of a disabling degree.

AR 24-25 (numbering added).

In all, the ALJ gave eight reasons to discount Dr. Crampton's opinion, but none of these reasons was specific and legitimate, or supported by substantial evidence in the record.

First, the ALJ gave Dr. Crampton's opinion little weight because he found it largely based on Plaintiff's self-report. AR 24. An ALJ may reject a physician's opinion "if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (citation and internal quotation marks omitted). Notably, however, a clinical interview and mental status evaluation are "objective measures" which "cannot be discounted as a self-report." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).

Dr. Crampton's report reveals he did not base his opinion on Plaintiff's self-reports; instead, Dr. Crampton conducted his own clinical interview and mental status examination, which are not self-reports. *See* AR 433-46; *Buck*, 869 F.3d at 1049. Moreover, the Ninth Circuit has acknowledged that due to the nature of psychiatry, "the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." *Id.* Hence, this was not a specific, legitimate reason to discount Dr. Crampton's opinion, as it was unsupported by the record and contrary to Ninth Circuit law.

Second, the ALJ discounted Dr. Crampton's opinion because Plaintiff did not disclose he used marijuana "regularly," and as such, Dr. Crampton was unable to accurately assess Plaintiff's functioning. AR 24. An ALJ may discount a doctor's opinion if the claimant "did not accurately disclose [his] substance abuse." *Ridgley v. Berryhill*, 706 Fed.Appx. 365, 365-66 (citing *Andrews*, 53 F.3d at 1039); *see also Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (finding an ALJ may discount a doctor's opinion if the opinion was based on incomplete or inaccurate information). Regardless, the ALJ's reasons for discounting the doctor must be supported by substantial evidence in the record. *See Bayliss*, 427 F.3d at 1214 n.1, 1216.

During Dr. Crampton's evaluation in July 2013, Plaintiff denied currently using drugs when the doctor asked him about drug use. AR 434. Plaintiff admitted, however, he had "a history of marijuana use." AR 434. Further, at the hearing in April 2016, Plaintiff indicated he stopped using marijuana a "couple of years" ago, since a change in medication. AR 64. Plaintiff similarly reported elsewhere that he had stopped using marijuana due to medication changes. AR 771. However, none of these records or the ALJ's decision reflect when exactly Plaintiff stopped using marijuana, or whether he was indeed regularly using marijuana at the time of his evaluation with Dr. Crampton. *See* AR 63-65, 434, 771.

The Court notes the ALJ's decision states Plaintiff told another psychological examiner in July 2014 he was smoking marijuana daily. *See* AR 25. Nevertheless, the ALJ's decision does not cite records showing Plaintiff was smoking marijuana regularly at the time of his evaluation with Dr. Crampton in July 2013. Thus, without any evidence showing Plaintiff was indeed regularly using marijuana at the time of his evaluation with Dr. Crampton, the Court cannot determine whether the ALJ's finding that Plaintiff was using marijuana regularly was supported by substantial evidence in the record. *See Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003)

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 6

(the ALJ must "build an accurate and logical bridge from the evidence to [his] conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings").

Furthermore, even if the ALJ's decision sufficiently showed Plaintiff was using marijuana in July 2013, the ALJ failed to explain how the marijuana use affected Plaintiff's functioning such that it countered Dr. Crampton's findings. On remand, if the ALJ intends to discount Dr. Crampton's opinion due to Plaintiff's marijuana use, he is directed to provide record citations showing Plaintiff's contemporaneous marijuana use. The ALJ is also directed to explain how Plaintiff's marijuana use impacts Dr. Crampton's particular findings. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) ("the agency [must] set forth the reasoning behind its decisions in a way that allows for meaningful review").

Third, the ALJ gave Dr. Crampton's opinion little weight because he found the activities Plaintiff reported to Dr. Crampton inconsistent with Dr. Crampton's findings. AR 24. The ALJ cited Plaintiff's ability to be a "single stay-at-home parent of three young children" despite Dr. Crampton's opinion that Plaintiff had "a severe limitation in his ability to adapt to changes at work" and "unable to complete a normal workday or workweek." AR 24.

An ALJ may discount a physician's findings if those findings appear inconsistent with a plaintiff's daily activities. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). But in this case, the fact that Plaintiff is a parent does not necessarily show he can adapt to changes at work or complete a normal workday or work week without interruptions from psychologically-based symptoms. The record reflects Plaintiff told Dr. Crampton he is a single parent and cares for two children. *See* AR 433. Plaintiff also reported – to Dr. Crampton and elsewhere – that his daily activities include caring for his children, such as getting them ready for school and preparing them meals. AR 302-03, 434. Yet the record further reflects Plaintiff's mother and

sister help Plaintiff care for his children by keeping track of their schedules, providing transportation for them, and cleaning. *See* AR 47, 294, 302. Hence, the fact that Plaintiff is a stay-at-home parent does not necessarily show he can adapt to changes at work or complete a normal workday or workweek without interruptions from psychologically-based symptoms, particularly given the assistance he receives from his sister and mother.

In addition to being unsupported by substantial evidence in the record, the ALJ's third reason for discounting Dr. Crampton's opinion was conclusory. An ALJ cannot use a conclusory statement to reject a doctor's findings; rather, the ALJ must state his interpretations and explain why they, rather than the doctors' interpretations, are correct. *See Embrey*, 849 F.2d at 421-22. Here, the ALJ's third reason for discounting Dr. Crampton's opinion was conclusory because he failed to explain how caring for children shows Plaintiff can adapt to change at work or complete a normal workday or workweek without interruptions from psychologically-based symptoms. *See* AR 24. The ALJ also did not state what "wide range of activities" Plaintiff engaged in that showed he did not have the severe limitations Dr. Crampton opined. In all, this reason for discounting Dr. Crampton's medical opinion was not specific and legitimate because it was unsupported by substantial evidence in the record and conclusory.

Fourth, the ALJ discounted Dr. Crampton's opinion because he "is not a treating provider" and based his opinion "on a one-time exam." AR 24. An examining doctor, by definition, does not have a treating relationship with a claimant and usually only examines the claimant one time. *See* 20 C.F.R. § 404.1527(c) (effective Aug. 24, 2012 to Mar. 26, 2017. "When considering an examining physician's opinion . . . it is the quality, not the quantity of the examination that is important. Discrediting an opinion because the examining doctor only saw claimant one time would effectively discredit most, if not all, examining doctor opinions."

*Yeakey v. Colvin*, 2014 WL 3767410, at *6 (W.D. Wash. July 31, 2014). Accordingly, discrediting Dr. Crampton's opinion simply because he saw Plaintiff once was not a specific and legitimate reason for doing so.

Fifth, the ALJ gave Dr. Crampton's opinion little weight because he found Dr. Crampton's "severe findings" inconsistent with the fact that he opined Plaintiff would not be permanently disabled or limited for no more than six months. AR 24. An ALJ may consider "internal inconsistencies" in a doctor's report in discounting that doctor's report. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) (citations omitted). But here, the ALJ failed to explain how the fact that Dr. Crampton found Plaintiff severely limited in some areas contradicted his opinion that Plaintiff would be limited for no more than six months. *See* AR 24. Furthermore, the fact that Dr. Crampton opined Plaintiff was severely limited in some areas does not necessarily contradict Dr. Crampton's opinion that Plaintiff would be limited for less than six months. Accordingly, this was not a specific, legitimate reason to discount Dr. Crampton's opinion, as it was conclusory and not supported by substantial evidence in the record.

Sixth, the ALJ discounted Dr. Crampton's opinion because Plaintiff lacked a treatment history despite reporting struggles with psychiatric symptoms for years. AR 24. The Ninth Circuit has held "the fact that [the] claimant . . . did not seek treatment for a mental disorder until late in the day is not a substantial basis on which to conclude that [a physician's] assessment of claimant's condition is inaccurate." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). This is particularly true given that those afflicted with depression "often do not recognize that their condition reflects a potentially serious mental illness." *Id.* (citation omitted); *see also Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989) ("it is a questionable practice to

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 9

chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation"). The ALJ also failed to explain how the fact that Plaintiff failed to seek treatment for his mental conditions conflicts with Dr. Crampton's findings. Therefore, the ALJ's decision to give Dr. Crampton's opinion little weight because Plaintiff failed to seek treatment was not a specific and legitimate reason for doing so. *See Nguyen*, 100 F.3d at 1465; *see also Treichler v. Comm'r of Soc. Sec. Admin.,* 775 F.3d 1090, 1103 (9th Cir. 2014) (citation omitted) ("the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence").

Seventh, the ALJ gave Dr. Crampton's opinion limited weight because he gave his opinion on a DSHS form, and "DSHS uses different rules and regulations to establish disability." AR 24. The purpose for which medical reports are obtained is not a legitimate basis for rejecting the reports. *Lester*, 81 F.3d at 832. Social Security Administration ("SSA") regulations likewise require every medical opinion be evaluated, regardless of its source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Additionally, although the ALJ claimed DSHS evaluations "are largely based" on the claimant's self-reports, this was inaccurate in this case, as Dr. Crampton performed both a clinical interview and mental status examination. *See* AR 24-25, 433-46; *Buck*, 869 F.3d at 1049. Therefore, the ALJ's rejection of Dr. Crampton's opinion because it was given on a DSHS form was not specific and legitimate or supported by substantial evidence.

Lastly, the ALJ discounted Dr. Crampton's medical opinion because he found the severity of Dr. Crampton's report inconsistent with his objective findings. AR 25. The ALJ noted Plaintiff "had some deficits, but they were not of a disabling degree." AR 25. Once again, the ALJ provided a conclusory reason to discount Dr. Crampton's opinion, as he failed to explain what aspects of the opinion were inconsistent with or unsupported by Dr. Crampton's findings.

Accordingly, this was not a specific and legitimate reason, supported by substantial evidence, to reject Dr. Crampton's opinion. *See Embrey*, 849 F.2d at 422 (an ALJ cannot merely state facts the ALJ claims "point toward an adverse conclusion and make[] no effort to relate any of these objective factors to any of the specific medical opinions and findings [he] rejects").

The ALJ failed to provide any specific and legitimate reason, supported by substantial evidence in the record, to give Dr. Crampton's opinion little weight. Therefore, the ALJ erred.

Harmless error principles apply in the Social Security context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Molina*, 674 F.3d at 1115. The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118-1119 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (quoting 28 U.S.C. § 2111)).

In this case, had the ALJ properly considered Dr. Crampton's opinion, the RFC and hypothetical questions posed to the vocational expert ("VE") may have contained additional limitations. For instance, the RFC and hypothetical questions may have reflected Dr. Crampton's opinion that Plaintiff was markedly limited his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. The RFC and hypothetical questions may have also reflected Plaintiff's severe limitations in his ability to adapt to maintain appropriate behavior in a work setting, and complete a normal work day or work week. The RFC and hypothetical questions posed to the VE did not contain these limitations. *See* AR 21, 67-68. Because the ultimate disability determination may have changed if all of Dr.

Crampton's findings were included in the RFC and hypothetical questions, the ALJ's failure to properly consider Dr. Crampton's opinion was not harmless and requires reversal. *See Molina*, 674 F.3d at 1117 (an error is not harmless if it "alters the outcome of the case").

B. <u>Dr. Karnik</u>

Plaintiff also asserts the ALJ erred by not commenting on the treatment records of treating psychiatrist Dr. Nitin Karnik, M.D. Dkt. 11, pp. 11-12. An ALJ "may not reject 'significant probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (quoting *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984).

In this case, Dr. Karnik provided Plaintiff with psychiatric treatment. *See, e.g.*, AR 454, 474, 481, 500, 504, 525, 535 (treatment notes). Plaintiff cites various treatment notes from Dr. Karnik and argues the ALJ erred by failing to comment on Dr. Karnik's opinions. Dkt. 11, pp. 11-12. Nevertheless, a review of the records Plaintiff cited reveals they contain no functional limitations. *See* AR 451, 454, 473, 474, 481, 500, 504, 525, 535. Instead, these records are brief progress notes, primarily containing descriptions of Plaintiff's moods, sleep habits, and medications. Therefore, even if the ALJ erred by failing to discuss the treatment notes Plaintiff cited, any error would be harmless. *See Molina*, 674 F.3d at 115 (an error is harmless if it "did not alter the ALJ's decision"); *see also Morgan*, 169 F.3d at 601 (ALJ permissibly rejected physician's opinion that contained only symptoms because it did not state how the symptoms translated into functional limitations). Accordingly, Plaintiff failed to show the ALJ committed harmful error by not discussing Dr. Karnik's treatment notes, and the ALJ need not discuss these treatment notes on remand. *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) ("The burden is on the party claiming error to demonstrate not only the error, but also that it affected his 'substantial rights.'").

C.  Mr. Johnson

Plaintiff asserts the ALJ erred in discrediting medical opinion evidence from Mr. Johnson, Plaintiff's treating mental health counselor. Dkt. 11, p. 11.

1.  *Applicable Legal Standard*

As a preliminary matter, the parties dispute whether Mr. Johnson is an acceptable medical source. Plaintiff asserts the ALJ erred in finding Mr. Johnson was not an acceptable medical source because he has a Ph.D., and a person with a Ph.D. is an acceptable medical source. *Id.* Defendant, on the other hand, argues that even if Mr. Johnson had a Ph.D., he must be a licensed or certified psychologist to be an acceptable medical source. Dkt. 12, p. 11 (citations omitted).

Whether or not Mr. Johnson is an acceptable medical source is relevant to the Court's inquiry in determining whether the ALJ erred regarding this opinion. If Mr. Johnson is a licensed or certified psychologist, or a licensed physician, he is an acceptable medical source and the ALJ can only reject Mr. Johnson's contradicted opinion with specific and legitimate reasons. *See* 20 C.F.R. § 404.1513(a) (effective Sept. 13, 2013 to Mar. 26, 2017); [1] *Lester*, 81 F.3d at 830-31. However, if Mr. Johnson is not a licensed psychologist or physician, and he is a therapist, he is an "other" medical source. 20 C.F.R. § 404.1513(d) (effective Sept. 13, 2013 to Mar. 26, 2017). "Other medical source" testimony, as with all lay witness testimony, "is competent evidence an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223-24 (9th Cir. 2010) (citing 20

---

[1] Although these regulations were amended effective March 26, 2017, the Court references the regulations as they were in effect at the time of the ALJ's May 20, 2016 decision.

1  C.F.R. § 404.1513(a), (d)). In rejecting lay testimony, the ALJ need not cite the specific record

2  as long as "arguably germane reasons" for dismissing the testimony are noted. *Lewis*, 236 F.3d at

3  512.

4  In this case, Plaintiff failed to show the ALJ erred in finding Mr. Johnson to be not an

5  acceptable medical source. Although some treatment records provide the notation "MA/Ph.D.,"

6  Mr. Johnson listed his credentials elsewhere as "MA, LMFTA, [and] MHP." *See, e.g.*, AR 447,

7  449, 453, 512. Furthermore – and perhaps more notably – Plaintiff failed to provide any record

8  citations showing Mr. Johnson is a licensed or certified psychologist or physician. *See* Dkt. 11, p.

9  11. Hence, Plaintiff failed to show the ALJ erred in concluding Mr. Johnson was not an

10 acceptable medical source. As such, the Court applies the "germane" reasons standard. *Lewis*,

11 236 F.3d at 512.

12     2. *Application of Standard*

13 Mr. Johnson provided Plaintiff with mental health counseling. *See, e.g.*, AR 447, 453,

14 460, 497, 507, 515 (treatment notes). On July 2, 2013, Mr. Johnson filled out a DSHS form

15 regarding Plaintiff's work-related limitations. *See* AR 510-12. Mr. Johnson wrote Plaintiff's

16 Bipolar I diagnosis "makes it difficult [for Plaintiff] to function daily." AR 510. For instance,

17 Mr. Johnson wrote Plaintiff suffers from "mood swings" and "energy swings," as he goes from

18 "severe depression to extreme mania." AR 510. Plaintiff's conditions likewise cause him to go

19 from "uncontrollable energy" to having "no energy at all." AR 510. Mr. Johnson further

20 determined Plaintiff's thoughts can be "confusing, inconsistent, and delusional at times." AR

21 510. Similarly, Mr. Johnson opined Plaintiff "has trouble focusing and staying on task," because

22 he becomes easily confused and overwhelmed and eventually gives up on tasks. AR 511. In

1 addition, Mr. Johnson wrote Plaintiff "has lost ability to manage his own monies due to his

2 condition." AR 511.

3       In all, Mr. Johnson wrote Plaintiff's "energy levels will not allow him to be a functioning

4 member of society and the workforce." AR 511. As a result of Plaintiff's conditions, Mr.

5 Johnson opined Plaintiff could not work even one hour per week. AR 510.

6       The ALJ summarized parts of Mr. Johnson's opinion and then discounted it for several

7 reasons. AR 25. In relevant part, the ALJ discounted Mr. Johnson's opinion because Plaintiff's

8 "care of [his] children show[ed] he could work more than one hour a week." AR 25. This was a

9 germane reason to discount Mr. Johnson's opinion. As discussed above, Plaintiff's daily

10 activities include getting his children ready for school and preparing them meals. *See* AR 294,

11 302-03, 434. As the ALJ accurately noted, these activities show Plaintiff "could work more than

12 one hour a week," contrary to Mr. Johnson's opinion. *See* AR 25, 510. Accordingly, this was an

13 arguably germane reason, supported by substantial evidence, to discount Mr. Johnson's opinion.

14 *See Lewis*, 236 F.3d at 511-12; *see also Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)

15 (citation omitted) ("If the evidence admits of more than one rational interpretation," the

16 Commissioner's decision must be upheld).

17       Further, while the ALJ provided other reasons to discount Mr. Johnson's opinion, the

18 Court declines to consider whether these remaining reasons contained error, as any error would

19 be harmless. *See* AR 25; *Presley-Carrillo v. Berryhill*, 692 Fed.Appx. 941, 944-45 (9th Cir.

20 2017) (citing *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008))

21 (noting that although an ALJ erred with regard to one reason he gave to discount a medical

22 opinion, "this error was harmless because the ALJ gave a reason supported by the record" to

23

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 15

discount the opinion). As such, the ALJ need not provide a new assessment of Mr. Johnson's opinion on remand.

D. Non-Examining Physicians

Plaintiff maintains the ALJ erred by giving great weight to the opinions from non-examining physicians Drs. Eugene Kester, M.D., Thomas Clifford, Ph.D., and Robert Hoskins, M.D. Dkt. 11, pp. 10-11 (citing 20 C.F.R. § 404.1527). Plaintiff essentially argues the ALJ erred solely because he gave greater weight to the non-examining physicians than to the examining and treating physicians. *Id.* Yet Plaintiff's argument is misplaced, as a non-examining physician's opinion may constitute substantial evidence when it is consistent with other independent evidence in the record. *Tonapetyan*, 242 F.3d at 1149 (citation omitted); *see also Mitchell v. Colvin*, 642 Fed.Appx. 731, 732 (9th Cir. 2016) (an ALJ generally does not err in giving great weight to a non-examining physician when the physician's opinion is consistent with the record). The Court furthermore notes Plaintiff failed to articulate a specific argument regarding how these non-examining physicians' opinions are contrary to the record. *See McCloud v. Astrue*, 640 F.3d 881, 887-88 (9th Cir. 2010) (Plaintiff has the burden of showing error in the ALJ's decision to credit evidence).

In any event, the Court has determined remand is necessary because of the ALJ's harmful error regarding Dr. Crampton's opinion. Given that proper consideration of Dr. Crampton's opinion may impact the ALJ's treatment of the non-examining physicians, the ALJ is directed to reassess the opinions of non-examining physicians Drs. Kester, Clifford, and Hoskins as necessary on remand, in light of how the ALJ reconsiders Dr. Crampton's opinion.

**II. Whether the ALJ properly determined Plaintiff did not meet Listings 12.04, 12.06, or 12.09.**

Plaintiff maintains the ALJ erred by failing to find his impairments met the "paragraph B" criteria of Listings 12.04, 12.06, or 12.09. Dkt. 11, pp. 6-8. Dr. Crampton's opinion contains limitations relevant to the paragraph B criteria in these listings, such as a marked limitation in his ability to perform activities within a schedule, maintain regular attendance, and be punctual without special supervision; a severe limitation in his ability to communicate; and a severe limitation in his ability to maintain appropriate behavior. *See* AR 435; 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 12.04, 12.06, 12.09 (effective Aug. 12, 2015 to May 23, 2016). Because reconsideration of Dr. Crampton's opinion may impact the ALJ's assessment of whether Plaintiff meets Listings 12.04, 12.06, 12.09, the ALJ shall re-evaluate these Listings as necessary on remand.

**III. Whether the ALJ properly assessed Plaintiff's subjective symptom testimony and lay witness testimony.**

Next, Plaintiff maintains the ALJ erred in his consideration of Plaintiff's subjective symptom testimony. Dkt. 11, pp. 8-10. The Court has determined the ALJ committed harmful error regarding Dr. Crampton's medical opinion. *See* Section I, *supra*. Given that reconsideration of Dr. Crampton's opinion may impact the ALJ's consideration of Plaintiff's testimony, the ALJ is directed to reconsider Plaintiff's testimony on remand.

In addition, Plaintiff argues the ALJ erred by failing to call his sister, Rhonda Crane, as a witness at the hearing. Dkt. 11, p. 12. Plaintiff asserts that although Ms. Crane was listed on a witness form provided to the ALJ at the start of the hearing, the ALJ "did not call Ms. Crane as a witness, as had been requested at the start of the hearing." *Id.* Plaintiff failed, however, to cite to any witness list contained in the record, and the hearing transcript indicates Plaintiff did not

make a request during the hearing for Ms. Crane to testify. *See id.; see also* AR 41-71. The Court's review of the record also did not reveal such witness list. Therefore, Plaintiff has failed to show the ALJ erred by not calling Ms. Crane as a witness at the hearing.

### IV. Whether an award of benefits is warranted.

Lastly, Plaintiff asserts that as a result of the ALJ's errors, an award of benefits is warranted. Dkt. 11, p. 13.

The Court may remand a case "either for additional evidence and findings or to award benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit created a "test for determining when evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d at 1292.

In this case, the Court has determined the ALJ committed harmful error regarding Dr. Crampton's medical opinion. Because outstanding issues remain regarding the medical evidence, Plaintiff's RFC, and his ability to perform other jobs existing in significant numbers in the national economy, remand for further consideration of this matter is appropriate.

## CONCLUSION

Based on the foregoing reasons, the Court hereby finds the ALJ improperly concluded Plaintiff was not disabled. Accordingly, Defendant's decision to deny benefits is reversed and this matter is remanded for further administrative proceedings in accordance with the findings contained herein.

Dated this 16th day of April, 2018.

David W. Christel
United States Magistrate Judge